**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:24cr20 |
| | ) | **Electronic Filing** |
| **DEMOND PINKETT** | ) | |

**MEMORANDUM OPINION**

On January 30, 2024, a grand jury returned a one count indictment against Demond Pinkett ("defendant"), charging him at count one with possession of a firearm and ammunition by a convicted felon, on or about January 17, 2024, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1). Count one identified the prior predicate felony offenses to support the 922(g)(1) charge and § 924(e) as an October 7, 1999, conviction for possession with the intent to distribute a controlled substance, in the Allegheny County Court of Common Pleas at Docket No. CP-02-CR-0010571-1998; a February 1, 2001, conviction for possession with the intent to deliver a controlled substance, in the Allegheny County Court of Common Pleas at Docket No. CP-02-CR-8227-2000; and a June 8, 2007, conviction for conspiracy to distribute and possess with the intent to distribute 100 grams or more of heroin, in the United States District Court for the Western District of Western Pennsylvania at Criminal Number 06-296.

The indictment also contains a "notice of special findings." This section notifies defendant that as to count one of the indictment, the government is seeking to establish that the three prior predicate offenses identified therein constitute convictions for a serious drug offense, as defined in 18 U.S.C. §§ 924(e)(2)(A)(ii), and these offenses were committed on occasions different from one another. In the event of conviction, if these convictions are proved and are qualifying predicate offenses, they would subject defendant to the enhanced penalties in the Armed Career Criminal Act, 18 U.S.C. § 924(e).

Presently before the court is defendant's motion to dismiss count one the indictment pursuant to the Second Amendment as construed by New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (Jun. 23, 2022), and Range v. Attorney General, 124 F.4th 218 (3d Cir. 2024) (*en banc*) ("Range II"). The government has filed a response to the motion. For the reasons set forth below, defendant's motion to dismiss will be denied as to his facial challenge pursuant to the Second Amendment, his due process challenge and his Commerce Clause challenge; and an evidentiary hearing will be held on defendant's as-applied challenge.

Defendant moves to dismiss the indictment on the grounds that it violates the Second Amendment, the Due Process Clause, and the Commerce Clause. He advances facial and as applied challenges pursuant to the Second Amendment as well as void-for-vagueness and Commerce Clause challenges.

More specifically, defendant maintains that an "as applied" analysis pursuant to Bruen and United States v. Rahimi, 602 U.S. 680 (2024), renders count one unconstitutional under the Second Amendment because a proper Second Amendment analysis requires a text-and-history approach that focuses on historical analogs and restrictions that are limited to regulations that were permissible at the founding. Moreover, in Range II, the Third Circuit did acknowledge that "physically dangerous people" could be disarmed, "at least temporarily." Range II, 124 F.4th at 228. Nevertheless, the court rejected the government's position that it could meet its burden by analogizing to the founding-era disarmament of disfavored groups like "Loyalists, Native Americans, Quakers, Catholics, and Blacks," because "any such analogy would be 'far too broad.'" Range II, 124 F.4th at 229 (quoting Bruen, 597 U.S. at 31)). It likewise rejected the government's efforts to meet its burden by categorical argument, *i.e.* that the constitutionality of § 922(g)(1) can be upheld based on the proposition that individuals convicted of serious crimes can be expected to misuse firearms.

Against this backdrop, defendant maintains that the panel decision in Pitsilides v. Barr, 128 F.4th 203 (3d Cir. 2025), inappropriately departed from Bruen's framework when it "derived a principle that disarmament is consistent with the Second Amendment 'as long as a felon continues to 'present a special danger of misus[ing firearms],' . . . in other words, when he would likely 'pose[ ] a physical danger to others' if armed.'" Id. at 210 (quoting Rahimi, 602 U.S. at 698). This misapplication was only compounded by the Pitsilides court's directive that district courts "adjudicating as-applied challenges to § 922(g)(1) consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." According to defendant, neither Rahimi nor Range II endorsed a principle that the government may disarm those who present a special danger of misusing a firearm.

So from defendant's perspective, the text and history approach properly focuses on the offense and the analogous forms of punishment that were rooted in the nation's tradition and history at the time the Second Amendment was ratified. Under such a properly confined analysis, the government cannot identify founding-era analogues supporting permanent disarmament of individuals with prior convictions like those of defendant. And even under the broader inquiry permitted by Pitsilides, the government's use of defendant's prior drug trafficking convictions is insufficient to establish dangerousness because they are not "the types of infamous offenses" that resulted in disarmament under the Nation's history and traditions of firearm regulation. So the government's asserted "evidence" is insufficient to establish 1) that defendant presents a likelihood of posing a physical danger to others if armed or 2) any other sufficient grounds for lifetime disarmament.

The government posits that defendant does not claim to have possessed the firearm for a lawful purpose and did not do so, thus placing his possession beyond the reach of the protections afforded by the Second Amendment. In addition, "an as-applied challenge requires a court to ask whether a statute's application to a particular person under particular circumstances deprived that person of a constitutional right." And adjudicating such a challenge requires consideration of all relevant circumstances bearing on a defendant's criminal history, regardless of whether any such particular facts have been charged. Gov. Brief in Opposition (Doc. No. 78) at p.14 (quoting Moore, 111 F.4th at 272-73 (a court may consider the challenger’s circumstances “regardless of whether they were charged”)). Indeed, "at a minimum, under historical tradition, disarmament is justified as long as a felon continues to present a special danger of misusing firearms." Id. at 18 (quoting Pitsilides, 128 F.4th at 210 (quoting Rahimi, 144 S. Ct. 1901)). And it is proper for a court considering an "as applied" challenge to conduct a hearing wherein the court "must consider a convict’s entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." Id. (quoting Pitsilides, 128 F.4th at 212). So unless the defendant concedes that he possessed the firearm for an unlawful purpose, the government is prepared to demonstrate that defendant's specific criminal history provides adequate justification for barring him from possessing a firearm: to whit, that defendant has an extensive criminal history of drug trafficking; and he was involved in such activity while contemporaneously possessing the firearm and ammunition at issue.

The Second Amendment provides that “the right of the people to keep and bear Arms, shall not be infringed.” U.S. Const. amend. II. "In District of Columbia v. Heller, the Supreme Court held that the Second Amendment 'confer[s] an individual right to keep and bear arms’ for traditionally lawful purposes, such as self-defense within the home." United States v. Quailes,

126 F.4th 215, 219 (3d Cir. 2025) (citing Heller, 554 U.S. 570, 595, 629). But the right "is not unlimited." Heller, 554 U.S. at 626. And the Court specifically noted that "nothing in [its] opinion should be taken to cast doubt" on laws like § 922(g)(1) that prohibit "the possession of firearms by felons." Id. at 626–27, n.26.

The constitutional standard endorsed in Heller was made more explicit in Bruen, where the Court announced "a new two-step analytic framework for analyzing Second Amendment challenges to firearm regulations." Quailes, 126 F.4th at 219 (citing Bruen, 597 U.S. at 31). "Courts must first determine whether 'the Second Amendment's plain text covers an individual's conduct.'" Id. at 219. "If it does, the Second Amendment 'presumptively protects that conduct." Id. In that event the court must "proceed to Bruen's second step, where 'the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.'" Id. "If the government satisfies its burden, the firearm regulation passes constitutional muster." Id.

In Rahimi, the Supreme Court cautioned that its recent rulings in this arena "were not meant to suggest a law trapped in amber." 602 U.S. at 691. The Court clarified that "the appropriate analysis" under Bruen's second step "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." "Why and how the regulation burdens the right are central to this inquiry." Id. "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." Id. Similarly, even though a law regulates arms-bearing for a permissible reason, it may nevertheless transgress the Second Amendment "if it does so to an extent beyond what was done at the founding." Id. "And when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional

muster.'" Id. While a law "must comport with the principles underlying the Second Amendment, it need not be a 'dead ringer' or a 'historical twin.'" Id.

In other words, "[u]nder Rahimi's principles-focused approach to analogical reasoning, courts are to evaluate challenged regulations at a higher level of generality than whether 'those regulations [are] identical to ones that could be found in 1791.'" United States v. Jamison, 2025 WL 2415749, *2 (M.D. Pa. Aug. 20, 2025). Instead of searching for a perfect statutory analogue, courts are to draw on “relevantly similar” historical regulations to derive “principles underlying the Second Amendment” and then ask if the modern-day regulation “comport[s] with th[ose] principles” in terms of “why and how it burdens the Second Amendment right.” Rahimi, 602 U.S. at 692. When conducted in this manner, application of the Second Amendment "is 'a commonplace task for any lawyer or judge.'" Id. (citing Bruen, 597 U.S. at 28).

In United States v. Moore, the United States Court of Appeals for the Third Circuit considered whether disarming convicts on supervised release was "consistent with the Nation's historical tradition of firearm regulation." 111 F.4th 266, 269 (3d Cir. 2024) (quoting N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 24 (2022)). After conducting the historical analysis required under Bruen as augmented by Rahimi, the court concluded that the government had met its burden to show that "history and tradition support disarming convicts who are completing their sentences," which extends through the completion of supervised release. Moore, 111 F.4th at 273. In United States v. Quailes, the court extended Moore's logic to the state equivalents of federal supervised release, “including a sentence of parole or probation.” 126 F.4th 215, 217 (3d Cir. 2025).

In Pitsilides, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense sought a declaration that as applied to him, Section 922(g)(1) would violate the Second Amendment. 128 F. 4th at 205. Pitsilides admittedly was a frequent gambler and

had been a professional poker player for a good number of years. He operated a successful chain of restaurants in Virginia and the Carolinas. He was convicted in 1998 under Pennsylvania law of one count of criminal conspiracy to commit pool selling and bookmaking and two counts of pool selling and bookmaking. In 2011, he was also convicted in Virginia of two counts of owning a place where illegal gambling was occurring. Id. at 206. The district court granted summary judgment in favor of the government under the previous framework utilized in Binderup v. Attorney General, 836 F.3d 336 (3d Cir. 2016) (*en banc*), abrogated by Bruen, reasoning that Pitsilides could not show his prior convictions were not serious. In so ruling, the district court relied on a "cross-jurisdictional consensus" holding that bookmaking, pool selling and similar crimes were sufficiently serious to permit disarmament pursuant to § 922(g)(1). Pitsilides, 128 F.4th at 206. Pitsilides appealed.

On appeal, Pitsilides took the position that as applied to him, Section 922(g)(1) was unconstitutional because there was "no historical tradition of permanent disarmament for gambling related offenses" and he did not pose "a credible threat to a person or society." Id. at 208. In analyzing these contentions, the court distilled the teachings of Bruen, Rahimi, and Range II and then applied those lessons to the case as presented. Id.

The Pitsilides court deduced three principles from Bruen, Rahimi, and Range II. First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors." Instead, the question is "whether the principles embodied in different strands of historical firearm regulations, '[t]aken together,' Rahimi, 602 U.S. at 698, 144 S.Ct. 1889, support contemporary restrictions, all the while remaining vigilant 'not to read a principle at such a high level of generality that it waters down the right,' id. at 740, 144 S.Ct. 1889 (Barrett, J., concurring)." Id. at 210 (emphasis supplied).

"Second, whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions." Id. But relief may only be granted where the record is "sufficient for a court to make an individualized determination that the applicant does not presently pose the kind of danger envisioned by Rahimi and Range II" and such a "determination necessarily demands individualized fact-finding." Id. (quoting Heller, 554 U.S. at 622).

And finally, "while Rahimi and Range II did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[ ] a physical danger to others' if armed.'" Id. (quoting Rahimi, 602 U.S. at 698; Range II, 124 F.4th at 232). And so what has become clear is "that the 'Second Amendment's touchstone is dangerousness.'" Id. at 210. Nevertheless, this principle cannot be employed "at such a high level of generality that it waters down the right." Id. (quoting Rahimi, 602 U.S. at 740) (Barrett, J., concurring). Instead, "a special danger of firearm misuse justifies disarmament when the harm at risk is relevantly similar to the kinds of harm that history shows justify disarmament." Id. at 210, n. 3 (quoting Folajtar, 980 F.3d at 924 (Bibas, J., dissenting); citing Kanter v. Barr, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting), United States v. Bullock, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam), United States v. Williams, 113 F.4th 637, 657 (6th Cir. 2024), and United States v. Jackson, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Although some offenses may provide conclusive evidence that the individual poses "a special danger of misusing firearms" against another, the inquiry often depends on the nature of a person's prior felony conviction. Id. at 211 (highlighting the scenario presented in Range II). "As the Sixth Circuit similarly observed, at least one principle underlying the Second

Amendment - that a legislature may disarm those who pose a physical danger to others - calls for examination of 'each individual's specific characteristics,' which 'necessarily requires considering the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1).'" Id. (quoting Williams, 113 F.4th at 657–58; and citing Kanter, 919 F.3d at 468 (Barrett, J., dissenting) (instructing courts to look beyond the "conviction" and assess whether the felon's "history or characteristics make him likely to misuse firearms").

Ultimately, the Pitsilides court remanded the case for additional discovery and development of the record bearing on "the prevailing Second Amendment analysis, including whether Pitsilides poses a special danger of misusing firearms in a way that would endanger others." Pitsilides, 128 F.4th at 213. In doing so, the court held:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament. As Range II illustrated, consideration of intervening conduct plays a crucial role in determining whether application of § 922(g)(1) is constitutional under the Second Amendment. See 124 F.4th at 232. Indeed, such conduct may be highly probative of whether an individual likely poses an increased risk of "physical danger to others" if armed. Id.

Id. at 212.

Moreover, the court rejected each parties' construction of the record. It rejected the government's contention that Pitsilides' criminal history was sufficient in itself to conclude that he presented such a danger. Id. And it rejected Pitsilides' position that gambling is not an inherently dangerous activity and there is a lack of Founding-era restrictions on firearm possession as a result of illegal gambling. Id. at 212. As to Pitsilides' position, the court further opined:

> But [Pitsilides' position] mistakes the relevant inquiry. Our consideration of history is not a hunt for "historical twin[s]," Bruen, 597 U.S. at 30, 142 S.Ct. 2111 (emphasis omitted), or "a doomed quest for historical dead ringers," Range II, 124 F.4th at 278 (Krause, J., concurring in the judgment). Instead, we look to the principles underlying our regulatory tradition, and the question here is whether Pitsilides may be disarmed consistent with the

> historical principle that legislatures may disarm a person who poses a danger to the physical safety of others. See Rahimi, 602 U.S. at 693, 144 S.Ct. 1889 ("From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."); Range II, 124 F.4th at 232 (concluding § 922(g)(1) was unconstitutional as applied when "the record contains no evidence that Range poses a physical danger to others"); see also Bullock, 123 F.4th at 185 (recognizing legislatures may prevent "dangerous people from possessing guns" (quoting Kanter, 919 F.3d at 451 (Barrett, J., dissenting))); Williams, 113 F.4th at 662 (holding "Congress may disarm individuals they believe are dangerous"); Jackson, 110 F.4th at 1128 (concluding disarmament is constitutional for people who would pose an "unacceptable risk of danger if armed").

Id. at 212. And the scope of this undertaking includes direct involvement in physical violence as well as criminal activity that has a significant threat of violence or danger. Id. (citing Folajtar, 980 F.3d at 922 (Bibas, J., dissenting) ("though residential burglary and drug dealing are not necessarily violent, they are dangerous because they often lead to violence") and Williams, 113 F.4th at 659 (legislatures may disarm those convicted of drug dealing or burglary because, while "[t]hese crimes do not always involve an immediate and direct threat of violence," they "may nonetheless pose a significant threat of danger," warranting disarmament).

Here, the framework established by Pitsilides makes two points clear at this juncture: first, defendant's contention that a properly confined analysis must be limited to a search for founding-era analogues supporting permanent disarmament of individuals with prior convictions like those of defendant is unavailing. This court is bound by Pitsilides and we are duty bound to consider defendant's entire criminal history and post-conviction conduct to the extent it is indicative of dangerousness, along with defendant's predicate offenses and the conduct giving rise to those convictions. And only after consideration of such an expanded record can this court make the individualized assessment as to whether defendant continues to present a special danger of misusing firearms and would likely pose a physical danger to others if armed. And under this broader inquiry, the government may seek to introduce uncharged allegations, reasonable inferences, and prior criminal conduct.

Second, defendant's "as applied" challenge cannot be adjudicated based on the current record. The government has the burden of proving the foundation for defendant's continued disarmament and the current record consists of nothing more than the allegations contained in count one of the indictment. No evidence is before the court to establish the points the government intends to rely on: namely that defendant has an extensive criminal record of drug trafficking; and that defendant was involved in drug trafficking while contemporaneously possessing the firearm and ammunition charged in the indictment. It follows that a Pitsilides hearing is required and accordingly such a hearing will be conducted.

Defendant's remaining challenges to the constitutionality of § 922(g)(1) can be readily resolved. Defendant's efforts to mount a facial challenge to § 922(g)(1) are without merit. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir 2010) (quoting City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 770 n. 11 (1988)). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)); accord United States v. Rahimi, 602 U.S. 680, 693 (2024) (to succeed on a facial challenge a defendant must "establish that no set of circumstances exist under which [§ 922(g)(1)] would be valid.").

Defendant cannot make the requisite showing. The United States Court of Appeals for the Third Circuit has held post Bruen that § 922(g)(1) is constitutional in at least some circumstances, such as when it is applied to those on parole, probation, or supervised release. United States v. Quailes, 126 F.4th 215, 224 (3d Cir. 2025) (parole or probation), cert. denied, 146 S. Ct. 127 (2025); United States v. Moore, 111 F.4th 266, 272, 273 & n.5 (3d Cir. 2024) (supervised release), cert. denied, 145 S. Ct. 2849 (2025). It also has held that an individual may

be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." Pitsilides, 128 F.4th at 210 (citing Rahimi, 602 U.S. at 698; Range II, 124 F.4th at 232; Bullock, 123 F.4th at 185; Williams, 113 F.4th at 657; and Jackson, 110 F.4th at 1128.)) These established bases in which § 922(g)(1) remains constitutional foreclose defendant's facial challenge.

Defendant's due process challenge likewise falls short. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000) and Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)); accord Interactive Media Entertainment and Gaming Ass'n Inc. v. Attorney General of U.S., 580 F.3d 113, 116 (3d Cir. 2009) (same). A conviction here will not offend either of these tenants.

Defendant did not seek prospective relief from the application of Section 922(g)(1) based on the nature of his prior conviction and a proposed course of lawful conduct. He thus remains in the category of people the legislature banned from possessing a firearm under Section 922(g)(1). After all, with minor exceptions not relevant here, the Supreme Court has repeatedly cautioned that the statute presumptively applies to all individuals who have been convicted of a prior felony offense. And "[w]here, as here, a plaintiff raises a facial challenge to a statute on vagueness grounds, the plaintiff 'must demonstrate that the law is impermissibly vague in all of its applications.'" Interactive Media Entertainment, 580 F.3d at 116 (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982) (emphasis in original)). The same authority foreclosing defendant's facial challenge under Bruen and Range II applies with equal force to his due process challenge.

Moreover, there is no indeterminacy of what fact the government must prove to obtain a conviction under the statute. There is no question that the grand jury charged defendant at count one with incurring such a prior factual event/offense. And more to the point, that Brian Range gained prospective relief from Section 922(g)(1) for his particular circumstances did not reduce the application of this straightforward statute into one of subjective assessments or judgments by government officials. Post Range II, the elements remain unchanged as does the breadth of the statute. Under these circumstances, defendant's due process challenge for vagueness rings hollow. Cf. Williams, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").[1]

For the reasons set forth above, defendant's motion to dismiss the indictment will be denied as to his facial challenge pursuant to the Second Amendment, his due process void-for-vagueness challenge and his challenge pursuant to the Commerce Clause; an evidentiary hearing will be conducted on defendant's as-applied challenge pursuant to the Second Amendment. An appropriate order will follow.

Date: November 22, 2026

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc: Katherine C. Jordan, AUSA
Gabrielle I. Lee, AFPD

(*Via CM/ECF Electronic Mail*)

---

[1] Defendant recognizes the Supreme Court's "post-New Deal precedents" foreclose any argument that § 922(g)(1) violates the Commerce Clause. He merely seeks to preserve his challenge that Congress does not have the authority under the Commerce Clause to promulgate the statute. Of course, at this time there is a lack of precedent for such a position and we must reject it for this reason.